This opinion decides consolidated appeals from the trial judge's denial of the motions of Modern Woodmen of America (Modern Woodmen) and its agent Gregory Bowen to compel arbitration of the claims of Bettina McElroy and Wayne McElroy (the plaintiffs). We affirm.
On June 9, 1998, the plaintiffs applied to purchase a health insurance policy from Celtic Life Insurance Company (Celtic) through its agent, defendant Gregory Bowen.[1] The plaintiffs gave Bowen a check for $128 to pay the first month's premium for the Celtic policy. The plaintiffs also signed an automatic bank authorization to have the monthly premiums withdrawn from their account for direct payment to Celtic. On November 12, 1998, the Celtic policy lapsed for failure to pay monthly premiums. The record supports an inference that the automatic bank draft authorization was somehow changed to pay premiums on two life insurance policies issued by Modern Woodmen instead of premiums on the Celtic health insurance policy.
On May 28, 1999, the plaintiffs sued Celtic, Modern Woodmen, and Bowen. In their initial complaint, the plaintiffs alleged that, although they agreed to purchase, and did purchase, a Celtic health insurance policy from Celtic's agent Bowen and paid him the first month's premium for the Celtic policy, Bowen did not use that money to pay for the Celtic policy but instead used that money to purchase the two separate life insurance policies from Modern *Page 522 
Woodmen, which the plaintiffs neither intended nor applied to purchase. The plaintiffs specifically alleged the following facts:
 "On or about July 1998 and August 1998, the defendant Modern Woodmen of America, through its agent Gregory L. Bowen while acting in the line and scope of his employment and without the plaintiffs' knowledge, enrolled the plaintiffs in two separate life insurance policies for which they never applied. Said policies being numbers 7435652 and 7482292.
 "On or about July 1998, August 1998, and on several occasions subsequent to the plaintiffs' enrollment in said life insurance polices, the defendant Modern Woodmen of America and defendant Gregory L. Bowen misrepresented to the plaintiffs that they were obligated to pay premiums on said policies. On or about August 1998 and at various times thereafter, the defendant Modern Woodmen of America and defendant Gregory L. Bowen also fraudulently began and continued taking monies from the plaintiffs for payment on said policies via automatic deductions from the plaintiffs' bank account."
(Complaint, C.R. 5.) The plaintiffs asserted claims of fraudulent misrepresentation, fraudulent suppression, and conspiracy and collusion among the defendants Celtic, Modern Woodmen, and Bowen to defraud the plaintiffs in purchasing health and life insurance policies. They asserted also claims of conversion and negligent hiring and supervision of Bowen by both Celtic and Modern Woodmen.
Celtic answered and admitted selling the plaintiffs a health insurance policy in June 1998 and cancelling that policy in November 1998 for the plaintiffs' failure to pay premiums. Celtic denied the other allegations and asserted the defense that the plaintiffs' complaint should be dismissed because they had agreed to arbitrate any disputes. On August 9, 1999, the plaintiffs moved to dismiss their claims against Celtic without prejudice. Two days later, the trial judge granted the motion and dismissed those claims without prejudice.
On August 13, 1999, both Modern Woodmen and Bowen separately answered the plaintiffs' complaint and asserted, among other defenses, that the plaintiffs' action should be dismissed because the plaintiffs had agreed to binding arbitration. (C.R. 54, 69.) In his answer, Bowen admitted that, on June 9, 1998, he sold the plaintiffs a Celtic health insurance policy, which lapsed in November 1998 for failure to pay premiums. Additionally, regarding the Modern Woodmen life insurance policies,
 "Bowen [`]admits['] that he submitted an application for life insurance with Modern Woodmen for plaintiff Bettina McElroy, with her knowledge and consent. Bowen denies that he submitted any application for Wayne McElroy, or attempted to `enroll' Wayne McElroy for any life insurance policy. Bowen [`]admits['] that he told Bettina McElroy that she would have to pay the premiums on the Modern Woodmen policy to keep it in force. Bowen admits that the bank account used by Bettina McElroy to draft payments for the premiums for her Modern Woodmen policy was erroneously drafted for a period of a few months in 1998."
(Bowen's Answer, C.R. 71.)
On August 18, 1999, Modern Woodmen and Bowen moved to compel arbitration on the basis of the arbitration provision contained only in the Celtic policy reading:
 "Controversies or disputes arising out of, in connection with, or relating to this certificate, which cannot be resolved to the satisfaction of both parties, may be *Page 523 
 resolved by arbitration, only as herein provided. Except that, judicial injunctive relief may be sought, if, such action is necessary to avoid irreparable harm to preserve the status quo. Arbitration may not be initiated more than one year after the date written notice of the controversy or dispute was given."
(C.R. 84.) (Emphasis added.) Neither Bowen nor Modern Woodmen contends that the Modern Woodmen life insurance policies purportedly sold to the plaintiffs contained any arbitration provisions. Rather, Modern Woodmen and Bowen rely solely on the arbitration provision in the Celtic policy as the contractual basis for compelling arbitration of the plaintiffs' claims. In the motions to compel, Modern Woodmen and Bowen assert that Modern Woodmen was incorporated with its principal place of business in Illinois and that Celtic also was incorporated with its principal place of business in Illinois. Modern Woodmen and Bowen assert further that the "plaintiffs' claims clearly `arise out of, in connection with, or relate to' the Celtic Life policy, and the alleged misconduct of Bowen and Modern Woodmen in connection therewith." (C.R. 85.)
Six days after Modern Woodmen and Bowen moved to compel arbitration, the trial court granted their motions without conducting a hearing. Thereafter, claiming that they had not had sufficient time to respond to the motions to compel, the plaintiffs moved for reconsideration of the trial judge's order compelling arbitration. The plaintiffs argued that the arbitration provision in the Celtic policy applied only to dealings and communications concerning the Celtic health insurance policy and not to dealings and communications concerning the Modern Woodmen life insurance polices. The trial judge granted the plaintiffs' motion to reconsider and conducted a hearing on October 29, 1999. On November 12, 1999, the plaintiffs amended their complaint and removed all references to the Celtic policy and to Celtic Life Insurance Company and eliminated their "conspiracy and collusion" claim. Modern Woodmen and Bowen moved to strike the plaintiffs' amended complaint on the ground that the plaintiffs amended their complaint merely to avoid arbitration.
On November 24, 1999, the trial court vacated its August 24, 1999, order compelling arbitration of the plaintiffs' claims and denied the defendants' motions to compel arbitration. The order of the trial court explains:
 "According to the plaintiffs' reply brief, amended complaint, and the arguments made by both parties before this Court on October 29, 1999, this lawsuit involves claims wherein the plaintiffs were sold two Modern Woodmen of America life insurance policies by a Modern Woodmen of America agent, Gregory L. Bowen. The plaintiffs allege that they never desired, applied for, and never willingly paid premiums on said policies, but rather were sold these two policies without their knowledge or consent. In fact, the plaintiffs allege that the defendant, Modern Woodmen of America, through their agent, defendant Gregory L. Bowen, misappropriated their signature for the two life insurance polices made the basis of this lawsuit. In connection with the selling and misappropriation of the plaintiffs' personal information, including misusing the plaintiffs' bank account to pay premiums on the Modern Woodmen of America policies, the plaintiffs allege that Gregory Bowen was acting as Modern Woodmen's agent and is being sued in connection with his activities as an agent for Modern Woodmen of America.
 "At the hearing on this matter before this Court on October 29, 1999, counsel *Page 524 
 for Modern Woodmen of America and Gregory L. Bowen conceded that the two life insurance policies issued by Modern Woodmen of America do not contain an arbitration contract. Rather, both defendants argue that each is seeking the benefit of an arbitration provision contained in a health insurance contract issued by Celtic Life Insurance Company which was sold to the plaintiffs in June of 1998. Defendant Gregory L. Bowen was the Celtic Life agent who sold the plaintiffs this health insurance policy.
 "Defendants Modern Woodmen of America and Gregory L. Bowen contend that the facts and circumstances surrounding the plaintiffs' complaint are so intertwined with the sale of the Celtic Life health policy that the plaintiffs' claims are connected with or are related to the Celtic Life policy and thus arbitration proceedings should be compelled.
 "As is reflected in plaintiffs' brief in support of their motion for reconsideration, the plaintiffs' amended complaint, and at oral arguments, the claims made the basis of the plaintiffs' complaint are not so intertwined that the facts and claims cannot be separated. Plaintiffs' claims revolve around two life insurance policies issued by defendant Modern Woodmen of America through defendant Gregory L. Bowen who is an agent for Modern Woodmen. The conduct for which the plaintiffs complain revolves around the conduct of Gregory L. Bowen as an agent for Modern Woodmen of America in the selling of said life insurance policies. Plaintiffs also allege claims against Modern Woodmen alleging, inter alia, that Modern Woodmen of America wrongfully withdrew money from the plaintiffs' bank account. No reference is made to the Celtic Life policy in the plaintiffs' maintenance of their claims against Modern Woodmen of America or Gregory L. Bowen as an agent for Modern Woodmen of America. According to the amended complaint and plaintiffs' reply brief, any reference to the Celtic Life insurance policy would only be collateral to the issues in this case as the sale of the health insurance policy shows how the plaintiffs came into contact with Gregory L. Bowen. See Wilson v. Waverlee Homes, Inc., 954 F. Supp. 1530
(M.D.Ala.), aff'd, 127 F.3d 40 (11th Cir. 1997).
 "Additionally, there is no conspiracy alleged by the plaintiffs in their amended complaint. As such, there can be no other conspiracy theory alleged by the plaintiffs as Celtic Life is not a party to these proceedings and because Gregory L. Bowen, as agent for Modern Woodmen of America cannot conspire with his principal. See Williams v. Marcum, 519 So.2d 473
(Ala. 1987); McClurkin v. Ziebach Webb Timber Co., Inc., 666 So.2d 520 (Ala.Civ.App. 1995).
 "Based upon the evidence, briefs, and oral arguments made by counsel for all parties, this Court concludes that the plaintiffs do not have to arbitrate any claims for which they did not contract to do so. See A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 362
(Ala. 1990); see also Southern Energy Homes, Inc. v. Parmer, 742 So.2d 159 (Ala. 1999); Blount International, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346 (Ala. 1993)."
(C.R. 275-77.) (Emphasis added.)
On appeal, both Modern Woodmen and Bowen argue that the trial court erred in allowing the plaintiffs to amend their complaint to remove all references and claims regarding the Celtic policy and in considering that amended complaint as a basis for denying the motions to compel arbitration. Modern Woodmen and *Page 525 
Bowen complain that the plaintiffs amended their complaint solely to avoid arbitration of their claims.
Rule 15(a), Ala.R.Civ.P., provides:
 "(a) Amendments. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause."
The Committee Comments to the rule (on the 1973 adoption of the rule) state:
 "Under the rule it will be entirely irrelevant that a proposed amendment changes the cause of action or the theory of the case or that it states a claim arising out of a transaction different from that originally sued on or that it caused a change in parties. The rule, instead is that amendments are to be allowed `freely . . . when justice so requires.' Normally, an amendment should be denied only if the amendment would cause actual prejudice to the adverse party."
(Citations omitted.) This Court has stated that:
 "[a]lthough Rule 15(a) itself calls for liberal amendment, this Court has held consistently that `the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion."
Boros v. Baxley, 621 So.2d 240, 245 (Ala.), cert. denied, 510 U.S. 997
(1993). This Court has also stated, "`[A]mendments are to be freely allowed and refusal of an amendment must be based on a valid ground.'"Stallings v. Angelica Uniform Co., 388 So.2d 942, 946-47 (Ala. 1980) (citations omitted).
The amendment challenged by Modern Woodmen and Bowen was filed 90 days after the trial court had granted the plaintiffs' motion to dismiss their claims against Celtic. The plaintiffs were not obligated to persist in proving allegations about Celtic and its policy that they did not need to prove to establish their claims against Modern Woodmen and Bowen. Likewise justice did not require the trial court to compel the plaintiffs to maintain and to prove allegations that were superfluous to the claims the plaintiffs were still pursuing against the remaining defendants, Modern Woodmen and Bowen, who have not pleaded or proven that the allegations about Celtic or its policy constitute part of any substantive defense. Modern Woodmen and Bowen have not established that they were prejudiced by the amendment in any way recognized by law. Although both Modern Woodmen and Bowen cite a few cases from other jurisdictions holding that parties cannot amend pleadings to avoid arbitration, those cases are not procedurally and factually analogous to the case before us. Thus the trial court did not abuse its discretion in allowing the plaintiffs to amend their complaint.
Modern Woodmen and Bowen argue further that the claims against them are subject to arbitration under the Federal Arbitration Act (FAA) because the claims are "arising out of, in connection with, or relating to" the Celtic health insurance policy. Modern Woodmen and Bowen contend that, although they are not signatories to the Celtic policy, they benefit from the arbitration provision in the Celtic policy because Bowen's actions, the gravamen of the plaintiffs' lawsuit, are *Page 526 
"intertwined" with his sale of the Celtic health insurance policy to the plaintiffs. Thus Modern Woodmen and Bowen claim that the plaintiffs are equitably estopped from seeking to avoid arbitration of their claims.
The plaintiffs argue that no valid arbitration agreement covers the claims asserted against Modern Woodmen and Bowen. The plaintiffs argue that the Celtic policy containing the arbitration provision applied to disputes between only the plaintiffs and Celtic or Bowen acting asCeltic's agent "arising out of, in connection with, or relating to" onlythe health certificate issued by Celtic.
 "A motion to compel arbitration is analogous to a motion for a summary judgment. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala. 1995); Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala. 1997). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala. 1995)."
TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). "`[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"AT T Techs., Inc. v. Communications Workers of America, 475 U.S. 643,648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkersv. Warrior Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347,4 L.Ed.2d 1409 (1960)).
 "[N]otwithstanding judicial deference to arbitration, the parties will not be required to arbitrate when they have not agreed to do so. John Wiley Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). `The courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the interest of the parties.' Goldberg v. Bear, Stearns Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990). The controversy must come within the arbitration provision of the contract before the court can order arbitration. Explo, Inc. v. Southern Natural Gas Co., 788 F.2d 1096 (5th Cir. 1986)."
Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346
(Ala. 1993). Further,
 "[w]hen parties so tailor an arbitration clause that it is applicable only in a clearly defined situation, such as the clause in this case, it indicates that the parties intended to limit the arbitrable issues to those specified. United Steelworkers of America v. Warrior Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1353-54, 4 L.Ed.2d 1409 (1960). A party to a contract can be forced to arbitrate only those issues he or she specifically agrees to submit to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists. Loerch v. National Bank of Commerce, 624 So.2d 552 (Ala. 1993)."
Ryan Warranty Servs., Inc. v. Welch, 694 So.2d 1271, 1273 (Ala. 1997).
In Ex parte Lovejoy, 790 So.2d 933 (Ala. 2000), this Court explained the parameters of the doctrine of equitable estoppel as it applies to a motion filed by a nonsignatory to a contract containing an arbitration provision, to compel arbitration of claims against the nonsignatory.
 "Pursuant to the doctrine of equitable estoppel, a plaintiff may be compelled to *Page 527 
 arbitrate his or her claims against a nonsignatory to a contract containing an arbitration provision if the claims `are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause.' Ex parte Dyess, 709 So.2d 447, 451 (Ala. 1997).
 Specifically, claims against a nonsignatory to a contract containing an arbitration provision are `founded on, and are intertwined with, the facts surrounding the underlying contract,' id., (1) where the plaintiff asserts breach of duty imposed or entailed by that contract, or (2) where the plaintiff alleges conspiracy or agency between a nonsignatory and a signatory to a contract containing an arbitration clause. Ex parte Isbell, 708 So.2d 571 (Ala. 1997). See also MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)."
Ex parte Lovejoy, 790 So.2d at 937. In the case before us, the plaintiffs' claims against Modern Woodmen and Bowen are not "founded on, [or] intertwined with, the facts surrounding the underlying [Celtic] contract" containing the arbitration provision. The plaintiffs' claims arise out of Bowen's actions in purchasing for them two Modern Woodmen life insurance policies which the plaintiffs did not intend or apply to purchase. The plaintiffs' claims do not involve the Celtic policy. The plaintiffs do not "assert [any] breach of duty imposed or entailed by that contract." Likewise, the plaintiffs do not "allege conspiracy or agency between a nonsignatory and a signatory to" the contract. The only "signatories," or parties, to the contract are Celtic and the plaintiffs themselves. They do not sue Bowen as the agent of Celtic, only as the agent of Modern Woodmen; and they do not allege any conspiracy or agency between either of the nonsignatories, Modern Woodmen or Bowen, on the one hand, and any of the signatories, Celtic or either of the plaintiffs, on the other hand. Therefore the doctrine of equitable estoppel does not entitle either Modern Woodmen or Bowen to invoke the Celtic policy arbitration agreement.
Finally, Modern Woodmen and Bowen in his capacity as an agent for Modern Woodmen are utter strangers to the Celtic policy. The arbitration provision in the Celtic policy cannot contemplate that it would benefit a rival insurance company and its agent operating to the exclusion of Celtic itself. The only parties to the Celtic contract are Celtic and the plaintiffs, who no longer have a dispute between them to arbitrate. The arbitration provision does not say or imply that either Modern Woodmen or its agent Bowen is a third-party beneficiary.
Accordingly, we affirm the judgment of the trial court denying the motions of Modern Woodmen and Bowen to compel arbitration of the claims of the plaintiffs.
AFFIRMED.
Moore, C.J., and Houston, Lyons, and Woodall, JJ., concur.
[1] It is undisputed that Gregory Bowen was a licensed agent for both Celtic and Modern Woodmen at the time he sold the Celtic policy to the plaintiffs.