Lanier Worldwide, Inc., (sometimes hereinafter, "Lanier") appeals the order of the trial court denying its motion to compel Kim Clouse, individually, and d/b/a Southern Printing to arbitrate her claims against Lanier. We reverse and remand.
Clouse, d/b/a Southern Printing, financed the lease of a Lanier copier with Green Tree Vendor Services Corporation, now Wells Fargo Financial Leasing, Inc.[1] The lease agreement names the lessor as Green Tree at its 95 Route 17 So., Paramus, New Jersey address; the lessee as Southern Printing at a 1606 Alabama Ave., Jasper, Alabama address; and the vendor of the copier as Lanier Worldwide at its 3535 Grandview Parkway, Suite 150, Birmingham, Alabama address. Pursuant to the tripartite agreement, Lanier "shipped the [copier] across state lines to deliver it to Southern Printing in Alabama" and installed the copier at Southern Printing.
Clouse, d/b/a Southern Printing, executed an "ORDER AGREEMENT" for service by Lanier on specified parts of the leased copier. Near the top of the "Order Agreement" appears the statement, "AGREEMENT CONSISTS OF THIS PAGE AND THE GENERAL TERMS AND CONDITIONS ATTACHED AND THE PAGE OF SPECIFIC TERMS AND CONDITIONS CHECKED ABOVE." (Emphasis added.) Arrayed above this sentence are these document names, apparently for the "SPECIFIC TERMS AND CONDITIONS": "PURCHASE SECURITY AGREEMENT," "LEASE AGREEMENT," "SALES AGREEMENT," "RENTAL AGREEMENT," *Page 294 
"SUPPLY SALE," AND "GMA." At the left side of each document name is a square for a checkmark, apparently to be entered if the particular document is used in the transaction. The "GENERAL TERMS AND CONDITIONS" are printed on the back of the Order Agreement form, but not one of the document names for the "SPECIFIC TERMS AND CONDITIONS" is checked on the Order Agreement signed by Clouse. However, near the bottom of the Order Agreement, immediately above the places for the parties' respective signatures, appears the following:
"GENERAL MAINTENANCE AGREEMENT/ON-LINE CONTRACT
"Toner Service Inclusive [(handwritten notation)]
 "CUSTOMER ACKNOWLEDGES BY INITIALING BELOW THAT THE GMA AND/OR ON-LINE CONTRACT HAS BEEN FULLY EXPLAINED AND OFFERED. kc [(handwritten initials)] INITIALS
 "CUSTOMER ACKNOWLEDGES PER COPY CHARGE OF .185 Full Color .02 BW [(handwritten entry)] IN EXCESS OF 0 [(handwritten entry)] COPIES PER month [(handwritten entry)]. INITIALS kc [(handwritten initials)]"
At the bottom of the Order Agreement, and to the left of the "CUSTOMER SIGNATURE (INDIVIDUAL)" line where Clouse signed her name, the following appears:
"ACCEPTED: Lanier Worldwide, Inc.
"2300 PARKLAKE DRIVE, NE
"ATLANTA, GA 30345-2979
 BY
_______________________________________TITLE______
 DATE ACCEPTED
___ 19______
__________________________________________________"
The Order Agreement is not signed by Lanier.
The "GENERAL TERMS AND CONDITIONS" printed on the back of the Order Agreement state, in pertinent part:
 "1. LANIER ACCEPTANCE. This Agreement is subject to approval by Lanier at Lanier's Home Office in Atlanta, Georgia. Written confirmation indicating acceptance will be mailed to Customer by Lanier. In the event this Agreement is not accepted by Lanier, any funds deposited by Customer shall be refunded and Customer will immediately surrender any Equipment which has been delivered. In no event shall the deposit by Lanier of checks or other instruments tendered by Customer in connection herewith constitute acceptance of this Agreement.
". . . .
 "5. ARBITRATION. Any controversy or claim arising out of or relating to this Agreement or the breach hereof, including any claim upon or arising from an alleged tort, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date of this Agreement, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any remedy that would be available from a court of law or equity shall be available from the arbitrator(s). The arbitration hearing and all proceedings in connection therewith shall take place in Atlanta, Georgia. The arbitration hearing shall be commenced within (90) days of the filing of a Demand for Arbitration by either party, and the award shall be rendered within thirty (30) days of the conclusion of such hearing."
(Emphasis added.)
Clouse sued Lanier and Wells Fargo Financial Leasing, Inc., for breach of implied *Page 295 
warranty of merchantability, fraudulent misrepresentation and suppression, and conspiracy. She alleged in her complaint that she had entered a "maintenance agreement" with Lanier.
Lanier moved to compel Clouse to arbitrate her claims against Lanier. It supported its motion with a brief and evidentiary materials. By affidavit Lanier swore that, pursuant to the Order Agreement, Lanier had entered a "General Maintenance Agreement" with Clouse, d/b/a Southern Printing, that Lanier had shipped the copier across state lines to Southern Printing, that Lanier had provided maintenance services to Southern Printing for 20 months, and that Lanier had mailed Southern Printing written invoices for these services from Atlanta, Georgia for those 20 months. Lanier attached to the affidavit copies of the Order Agreement, the General Terms and Conditions, and other documents.
Clouse submitted a brief and evidentiary materials in opposition to the motion to compel arbitration. Clouse did not deny that Lanier had delivered the copier across state lines, that Lanier had provided the services for 20 months, or that Lanier had invoiced Clouse monthly from Atlanta for the 20 months of service. Rather, she contended that, because Lanier did not sign the Order Agreement or mail Clouse "[w]ritten confirmation indicating acceptance" of the Order Agreement as its terms require for Lanier to have accepted the Order Agreement, Lanier never accepted the Order Agreement, which contained the arbitration provisions. Clouse contended, therefore, that the absence of acceptance by Lanier prevented the formation of a contract and thereby rendered the arbitration provisions unenforceable. After a hearing, the trial court denied the motion to compel arbitration.
On appeal, Lanier contends, as it did before the trial court, that the invoices Lanier mailed Clouse for the services Lanier provided pursuant to the Order Agreement constituted the "[w]ritten confirmation indicating acceptance" required by the Order Agreement. Lanier further contends, as it did before the trial court, that the performance by Lanier manifested its acceptance and that Clouse's signature on the Order Agreement and her acceptance of the performance by Lanier both severally bound Clouse to the arbitration provisions in the Order Agreement.
 "A motion to compel arbitration is analogous to a motion for a summary judgment. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala. 1995); Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala. 1997). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala. 1995)."
TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). "[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson,749 So.2d 441, 446 (Ala. 1999).
"[A]rbitration agreements [are] as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood Conklin Mfg. Co.,388 U.S. 395, 404 n. 12 (1967). "'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT T Techs., Inc. v. Communications Workers of America, 475 U.S. 643,648, 106 S.Ct. 1415, 89 L.Ed.2d 648 *Page 296 
(1986) (quoting United Steelworkers v. Warrior Gulf Navig.Co., 363 U.S. 574, 582 (1960)).
"'When deciding whether parties agreed to arbitrate a certain matter (including arbitrability) courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" OakwoodMobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala. 2000) (quotingFirst Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "`The courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the interest of the parties.'" Blount Int'l, Ltd. v. James River-Pennington, Inc.,618 So.2d 1344, 1346 (Ala. 1993) (quoting Goldberg v. Bear, Stearns Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990)). Accord ModernWoodmen of America v. McElroy, 815 So.2d 520, 526 (Ala. 2001).
 "This Court has held that the object of a signature on a contract is to show mutuality and assent, and that mutuality and assent can be manifested in ways other than a signature. See Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1986); Ex parte Pointer, 714 So.2d 971 (Ala. 1997). Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon. Tarver, 492 So.2d at 304.
 ". . . `The [Federal Arbitration Act] only requires that there be a "written provision" in a "contract;" it does not specify that a party's assent to the terms of a contract containing an arbitration provision can be evidenced only by that party's signature.' Ex parte Rush, 730 So.2d 1175 (Ala. 1999). Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance. Anderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley, 720 So.2d 895 (Ala. 1998) (the failure of a party to sign a contract on a signature line next to an arbitration provision did not render the provision unenforceable). In addition, it is a general principle of contract law that when a contract is signed by a party or parties `to be charged,' a contract can be enforced where the other party fails to sign the contract. See Anselmo Meat Co. v. Riley, 533 So.2d 552 (Ala. 1988)."
Merrill Lynch, Pierce, Fenner Smith, Inc. v. Kilgore, 751 So.2d 8,11 (Ala. 1999).
In this case, the party "to be charged" by enforcement of the contract is Clouse, d/b/a Southern Printing. Clouse does not deny that she signed the Order Agreement containing the arbitration provisions. The performance of services and the monthly invoicing by Lanier evidence its assent to the terms of the Order Agreement. Clouse does not deny that she accepted the services. Thus, the lack of a signature by an agent of Lanier on the Order Agreement does not render the arbitration provisions unenforceable in this case. Kilgore, supra.
Before the trial court, Clouse relied on Med Center Cars, Inc. v.Smith, 727 So.2d 9 (Ala. 1998), and Premiere Chevrolet, Inc. v.Headrick, 748 So.2d 891 (Ala. 1999), as authority for her contention that the arbitration provisions were unenforceable in the absence of a signature by Lanier on the Order Agreement. On the one hand, each of these precedents did hold that certain arbitration provisions were unenforceable because they had not been signed by the party which later sought enforcement. On the other hand, each of these precedents is distinguishable from the case now before us. The distinction common to both precedents is that, in *Page 297 
each, the performance by the party which sought enforcement of the arbitration provisions was attributable to a different and distinct contract that did not contain or incorporate the arbitration provisions. Thus, the party which sought enforcement of the arbitration provisions in Med Center Cars, supra, apparently did not even argue that its performance evidenced acceptance of the terms of the document containing the arbitration provisions; and the party which sought enforcement in Premiere Chevrolet, supra, could not validly argue that its performance evidenced acceptance of the terms of the document containing the arbitration provisions, since that document did not provide for any obligations that party could have been performing.
In the case now before us, the performance by Lanier is attributable to the Order Agreement, the very document which contains the arbitration provisions. Therefore the performance by Lanier can and does evidence its acceptance, and neither Med Center Cars nor Premiere Chevrolet avails Clouse to the contrary.
Virtually all features of the transaction and contract apparent from the record in the case now before us were interstate commerce. Therefore, a fortiori, the transaction and contract "involved commerce" within the meaning of § 2 of the Federal Arbitration Act ("FAA"),9 U.S.C. § 1 et seq., and therefore fulfilled this criterion of the FAA for its applicability to the transaction and the contract. Lanier proved that Lanier and Clouse, d/b/a Southern Printing, formed a contract "calling for arbitration." TranSouth Fin. Corp., 739 So.2d at 1114. Therefore, the trial court erred[2] in denying the motion to compel arbitration filed by Lanier. We reverse the order entered by the trial court and remand this cause for entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Wells Fargo is not a party to this appeal.
[2] Clouse did not defend the trial court or assist this Court by filing a brief here.