Memberworks, Inc., a defendant in an action pending in the Mobile Circuit Court, appeals from that court's order denying its motion to compel arbitration. Memberworks argues that it has proven the existence of a contract calling for arbitration and has proven that that contract involves a transaction substantially affecting interstate commerce. James A. Yance, Jr., the plaintiff, argues that he never assented to an agreement to arbitrate. We reverse and remand.
 I.
On July 14, 2000, James Yance telephoned a toll-free number to order a knife he had seen advertised on television. After placing his order, the telephone operator offered Yance a free 30-day trial membership in the Leisure Advantage program, a discount club operated by Memberworks that provides shopping and travel discounts to its members.[2] Their conversation was recorded; that conversation, as transcribed, was as follows:
 Operator: "Ok, for placing your order today, we are sending you a risk-free 30-day membership to Leisure Advantage and that is a service offering reward savings from leading stores such as Kmart, The Sports Authority, Barnes and Noble and Foot Locker, plus up to 50% off hotels, skiing and more. Now, best of all just for trying the program you can receive a valuable discount golf directory and a membership card which gives you up to 50% off at over 2,000 golf courses. Now, after thirty days, the service is extended to a full year for just $7.00 a month billed annually in advance to the credit card you are using today. Now, if you decide the program is not for you, just call the toll-free number in your kit in the first 30 days and you won't be billed, so look for that kit in the mail — okay?"
Yance: "Okay."
Memberworks enrolled Yance in the Leisure Advantage program and sent him the Leisure Advantage membership kit. Included in the membership kit was a document titled "Terms of Membership and Membership Agreement" ("the membership agreement"). That document stated in relevant part that "[a]ny dispute arising between You and Us will be resolved by submission to arbitration in Fairfield County, State of Connecticut in accordance with the rules of the American Arbitration Association then in effect." *Page 942 
Yance did not cancel his membership in the Leisure Advantage program within the 30-day trial period. Accordingly, on August 18, 2000, Memberworks billed his credit card $84 for one year's membership in the program. In May 2001, Memberworks mailed Yance information about renewing his account for the next year. The mailing contained a notice that Yance's membership in the Leisure Advantage program would be renewed unless he canceled within 30 days. Yance took no action and, on June 18, 2001, Memberworks billed his credit card $99.95 for another year's membership. One year later, in May 2002, Memberworks mailed Yance another renewal notice telling him his account would be renewed if he did not cancel within 30 days. Yance did not cancel and, on June 19, 2002, Memberworks billed his credit card for $119.95.
On June 21, 2002, after his wife noticed the Memberworks charge on the credit-card statement, Yance dialed the Memberworks telephone number listed on the statement to investigate the charge. After Yance complained that he had never authorized his participation in the program, Memberworks refunded him all three years' payments. At no time during the period Yance was enrolled in the Leisure Advantage program did he ever use it.
On July 2, 2002, Yance sued Memberworks in the Mobile Circuit Court. Memberworks moved the trial court to compel arbitration pursuant to the arbitration provision contained in the membership agreement. After a hearing, the trial court denied Memberworks' motion, holding that Memberworks had failed to meet its burden of proving the existence of a contract calling for arbitration. Memberworks appeals.
 II.
This Court reviews de novo a trial court's ruling on a motion to compel arbitration. Green Tree Fin. Corp. of Alabama v.Vintson, 753 So.2d 497, 502 (Ala. 1999). In Jim Walter Homes,Inc. v. Saxton, 880 So.2d 428, 430 (Ala. 2003), this Court stated:
 "A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. Kenworth of Birmingham, Inc. v. Langley, 828 So.2d 288, 290 (Ala. 2002). Once those two items have been shown, the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question. Id."
 III.
"`The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" Ex parte Grant,711 So.2d 464, 465 (Ala. 1997) (quoting Strength v. Alabama Dep't ofFin., Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala. 1993)). Memberworks argues that it has presented evidence of each of these elements. Specifically, Memberworks points to the transcript of the telephone call between Yance and the operator, which shows that Yance affirmatively answered "okay" when the operator told him that he was going to be enrolled in the Leisure Advantage program. Moreover, Memberworks argues that Yance further manifested his assent to take part in the Leisure Advantage program when he paid the annual fee to participate in the program in 2000 and 2001. See Lanier Worldwide, Inc. v.Clouse, 875 So.2d 292, 296 (Ala. 2003) ("`Conduct of one party to *Page 943 
a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance.'" (quotingMerrill Lynch, Pierce, Fenner Smith, Inc. v. Kilgore,751 So.2d 8, 11 (Ala. 1999))). We disagree with the trial court's conclusion that this evidence is insufficient to establish the existence of a contract between Memberworks and Yance.
Moreover, Yance has not argued on appeal that there was no
contract with Memberworks; instead, he merely argues that he did not assent to an agreement to arbitrate. He argues that, because the telephone operator did not tell him about the arbitration provision when he agreed to enroll in the Leisure Advantage program, he never agreed to arbitrate any claim. He argues that Memberworks at best merely "proposed arbitration" by later sending him a notice that all disputes would be resolved by arbitration.
Yance argues in his brief that, "if there were to be any finding that Yance had assented to an arbitration agreement, it would have to be based on something that occurred after that conversation [with the telephone operator], and after
Memberworks had mailed the package that included the fine-print one-sentence arbitration proposal." (Emphasis in original.) "Something" did occur after Memberworks mailed him the membership agreement that contained the arbitration provision — Yance maintained his relationship with Memberworks by continuing to pay his annual membership fee. As this Court stated in UBSPaineWebber, Inc. v. Brown, 880 So.2d 411, 414 (Ala. 2003), "a person who continues a business relationship after receiving notice of an arbitration provision in the contract governing that relationship implicitly consents to arbitrate any dispute that falls within the scope of the agreement" (citing SouthTrust Bankv. Williams, 775 So.2d 184, 189-91 (Ala. 2000)).
Yance would distinguish his case from UBS PaineWebber and similar cases, stating that, unlike the plaintiffs in those cases, he never engaged in any "intentional conduct" that would have manifested his assent to the arbitration provision. He claims that he never had any contact with Memberworks subsequent to his initial telephone call to a call center, that he never availed himself of any of the services available to participants in the Leisure Advantage program, and that Memberworks received his annual membership fees only because they "took the money" by billing it to his credit card, not because he sent it in. At most, he claims, the "only" fact from which Memberworks might have inferred his assent is the fact that he never affirmatively acted to cancel his membership.
Yance's argument is unpersuasive. The fact he never canceled his membership is exactly what caused his business relationship with Memberworks to continue,[3] thus bringing him within the reach of the principle recently recited in UBS PaineWebber.
While Memberworks may have billed Yance's credit card for the annual membership fee, it was Yance who paid his credit-card bill for two years without any question as to the legitimacy of the charge. Those actions manifested his assent to abide by the terms of the arbitration agreement of which he received notice when he joined the program. Memberworks *Page 944 
has proven not only that there was a contract between it and Yance, but also that that contract contained an arbitration agreement.
 IV.
Because the trial court concluded that Memberworks failed to meet its initial burden of proving the existence of a contract containing an arbitration provision, that court found it unnecessary to consider whether the alleged contract substantially affected interstate commerce. Yance therefore argues that, if this Court does find the existence of a contract containing an arbitration agreement, it should "conserve its own resources" and remand the case to the trial court for that court to determine whether the contract substantially affected interstate commerce. Because it is readily apparent from the undisputed facts that the contract between Yance and Memberworks had the requisite effect on interstate commerce, we decline to do so.
In determining whether a transaction has a substantial effect on interstate commerce, the Supreme Court of the United States has stated that it is not necessary to establish that the transaction at issue had any specific effect upon interstate commerce "if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 57,123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting Mandeville IslandFarms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236,68 S.Ct. 996, 92 L.Ed. 1328 (1948)). Therefore, the applicable test is whether the transaction "involved commerce" sufficient "to trigger application of the [Federal Arbitration Act]." WolffMotor Co. v. White, 869 So.2d 1129 (Ala. 2003). Memberworks is a Delaware corporation headquartered in Connecticut; Yance is a resident of Alabama. Memberworks conducts business nationwide. The contract at issue was mailed to Yance from Connecticut using the United States Postal Service. After Yance failed to cancel his membership within the 30-day trial period, Memberworks charged Yance's credit card, which was issued by a bank in Louisiana. Those fees were then electronically transferred to Memberworks' accounts in North Carolina and Illinois. This showing is sufficient to establish that this particular contract involved interstate commerce and, therefore, that it falls within the reach of the Federal Arbitration Act.[4] See WolffMotor Co., 869 So.2d at 1133 ("the Supreme Court of the United States found that the transaction at issue [in Citizens Bank] fell within the scope of the [Federal Arbitration Act] because `Alafabco engaged in business throughout the southeastern United States'").
 V.
Because Memberworks has proven the existence of a contract containing an arbitration agreement and has presented the necessary evidence proving that the underlying transaction involves interstate commerce, and because Yance has presented no evidence indicating that the arbitration agreement is not valid, we reverse the trial court's order denying Memberworks' motion to compel arbitration and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED. *Page 945 
LYONS, BROWN, WOODALL, and STUART, JJ., concur.
HOUSTON and HARWOOD, JJ., dissent.
[2] Memberworks had contracted with the call center that took Yance's order to market the Leisure Advantage program to individuals who telephoned the call center to place orders for merchandise.
[3] The terms of the membership agreement between Yance and Memberworks state: "Unless You notify Us that You wish to terminate this Agreement and cancel your Membership by following the instructions below, your Membership will be renewed automatically and You will be billed the then-effective Membership Fee which will appear on your statement. This is known as a Negative Option Membership Plan."
[4] Under the Federal Arbitration Act, "`the enforcement of arbitration agreements [is] within the full reach of the Commerce Clause.'" Citizens Bank v. Alafabco, Inc., 539 U.S. at 56,123 S.Ct. 2037 (quoting Perry v. Thomas, 482 U.S. 483, 490,107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)).