Rel: April 25, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0454

_____

## Zynga, Inc.

### v.

## Gayla Hamilton Mills

## Appeal from Franklin Circuit Court
## (CV-23-900033)

_____

### SC-2024-0455

_____

**Huuuge, Inc.**

**v.**

**Olivia Taylor Gann**

**Appeal from Franklin Circuit Court**
**(CV-23-900125)**

COOK, Justice.

These consolidated appeals arise from a dispute over whether the claims asserted by the plaintiffs are subject to arbitration. The defendants are online-game companies that own and operate casino-themed, social gaming applications. The "Terms of Service" for those applications include an arbitration provision and are made available when a player initially downloads the games. The plaintiffs do not purport to have played any of the defendants' games but bring these actions pursuant to § 8-1-150(b), Ala. Code 1975, an Alabama statute that allows "[a]ny other person" to "also recover" money paid and lost due to gambling for the use of the gambler's wife, children, or next of kin.[1]

In their complaints, the plaintiffs alleged that the defendants'

---

[1]Section 8-1-150(a), Ala. Code 1975, also allows the gamblers themselves to seek recovery of the money they have lost as a result of gambling.

games constitute illegal gambling and sought, on behalf of the "families" of persons who have played the defendants' games, "all sums paid by Alabama residents" for the games. The complaints expressly asserted that the actions were not class actions, but they did not include the name of any Alabama resident who had played the games.

Before the Franklin Circuit Court ("the trial court"), the defendants moved to compel arbitration of each case, citing the arbitration agreements between the defendants and the persons who played their games. The defendants additionally moved to dismiss each case pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing, in pertinent part, that § 8-1-150(b) did not permit the plaintiffs to pursue a mass claim on behalf of "the wife, children or next of kin" of every Alabama citizen who had played the defendants' games. And, they argued that their games were ordinary video games for entertainment -- not gambling -- that provided no payouts to players. The trial court denied these motions, and the defendants now appeal.

As explained below, because the plaintiffs, in asserting claims pursuant to § 8-1-150(b), are standing in the legal shoes of players who undisputedly agreed to arbitrate their own claims under § 8-1-150(a),

their claims against the defendants in these cases must be arbitrated. We, thus, reverse the trial court's orders denying the defendants' motions to compel arbitration.

Facts and Procedural History

As stated previously, under § 8-1-150(b), the plaintiffs in both of the underlying actions seek to recover the money Alabama citizens have paid and lost in alleged gambling endeavors for the use of the players' families. Section 8-1-150 provides:

> "(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.
>
> "(b) Any other person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.
>
> "(c) A judgment under either subsection (a) or (b) for the amount of money paid, thing delivered, or its value is a good defense to any action brought for such money, thing, or its value under the provisions of the other subsection.
>
> "(d) A judgment recovered under the provisions of this section is a defense to any proceeding on any garnishment served after the recovery of such judgment, and the court may make any order staying proceedings as may be necessary to

4

protect the rights of the defendant."

On March 8, 2023, Gayla Hamilton Mills filed her complaint against Zynga, Inc., in the trial court. Mills appeared as the sole plaintiff, acting in a representative capacity to recover damages that, she alleged, would be payable to various nonparties under § 8-1-150(b).

Zynga removed the case to the United States District Court for the Northern District of Alabama on diversity grounds. However, on August 11, 2023, that court remanded the case back to the trial court for lack of subject-matter jurisdiction, specifically finding that, because the individual claims of the yet-to-be identified nonparties could not be aggregated, the amount-in-controversy threshold for diversity jurisdiction had not been met. Mills subsequently filed an amended complaint in the trial court on September 13, 2023.

The second case, against Huuuge, Inc., was commenced in the trial court on September 14, 2023, by Olivia Taylor Gann. Like Mills, Gann appeared in a representative capacity as the sole plaintiff, seeking, pursuant to § 8-1-150(b), to recover damages that would be payable to numerous, yet-to-be identified, nonparties.

A. The Complaints

In their virtually identical operative complaints, Mills and Gann ("the plaintiffs") alleged that Zynga and Huuuge ("the defendants") made available "online games of chance in a variety of formats including, but not limited to, slot machines, card games and other games of chance." According to the plaintiffs, users who play those games are initially given free coins to play. They then spend the coins to play a game. If they lose the game, they lose the coins wagered. If they win the game, they win additional coins that allow them to play longer. When a user runs out of coins entirely, they have to "purchase coins if they wish to continue playing the game with full functionality."

The plaintiffs alleged that the defendants' games are games of chance. According to them, such games violate Alabama law if a user pays money for the chance to win anything of value. They argued that "paying money to get 'coins' that one bets hoping to win more coins so as to gain the 'privilege of playing at a game or scheme without charge' is gambling a thing of value in Alabama." Thus, they said, the games constitute illegal gambling and § 8-1-150(b) explicitly authorized them to bring these actions to recover the money lost to the defendants for the families of the Alabamians who lost it.

B. The Motions to Dismiss

The defendants moved the trial court to dismiss both actions. The defendants vigorously disputed the allegations in the complaints, arguing that their games are not gambling but merely ordinary video games played purely for entertainment. They emphasized that their games never require players to spend any money and also provide no opportunity for players to win money.

In addition, the defendants argued, in pertinent part, that the plaintiffs' actions were not authorized by § 8-1-150(b). According to the defendants, § 8-1-150(b) permits a person to recover only the identified gambling losses of an individual gambler and does not allow a single plaintiff to recover multiple gambling losses for the benefit of multiple families. The defendants thus argued that § 8-1-150(b) did not authorize the plaintiffs to pursue their claims on behalf of the wife, children, or next of kin of every Alabama citizen who has played the defendants' games, and they urged the trial court to dismiss the actions for failure to state a claim upon which relief may be granted.

In opposition to the motions to dismiss, the plaintiffs underscored that "the legislature chose, in section (a) of [§ 8-1-150] to void 'all

7

contracts founded in whole or in part on a gambling consideration.' … Not just some of them. Not just one at a time. All." According to the plaintiffs, moreover, "[n]othing in [§ 8-1-150(b)] says anything about the 'other person' … having to sue for the losses of multiple people in separate cases." Thus, the plaintiffs argued that § 8-1-150(b) authorized their claims seeking to recover multiple gambling losses for the use of multiple families, and they urged the trial court to deny the motions to dismiss.

C. The Motions to Compel Arbitration

The defendants also moved to compel arbitration of each case, citing the arbitration agreements between the defendants and the persons who played their games. The arbitration agreement on which Zynga relied provides, in pertinent part:

"By voluntarily accepting these Terms, you, Zynga, and any member of the Zynga entities all agree to the fullest extent permitted by law to resolve any claims arising out of, relating to, or in connection with the Terms, Feature Terms, Community Rules, your relationship with us, or Zynga's services, including but not limited to your use of the Services and information you provide via the Services, through final and binding arbitration."

The arbitration agreement between Huuuge and the users who play its games similarly provides, in pertinent part:

"To the fullest extent allowed by law, You and Huuuge agree

8

to submit all Disputes between us to individual, binding arbitration .... A 'Dispute' means any dispute, claim, or controversy (except those specifically exempted below) between You and Huuuge that in any way relates to or arises from any aspect of our relationship, including, without limitation, Your use of the Games and Services, all marketing related to the Games and Services, enhancements, Virtual Currency, any licensed content, and all matters relating to or arising from these Terms of Use (including Huuuge's Privacy Policy and all other terms incorporated into these Terms of Use) or any other agreement between You and Huuuge, including any disputes over the validity, enforceability, or interpretation of this agreement to arbitrate."

In its motion to compel arbitration, Zynga argued that, because the claims asserted by Mills derived from alleged wrongs committed against the players who had entered arbitration agreements with Zynga, those claims were "subject to the same limitations that bind the signatories on whom they depend." Huuuge's motion to compel arbitration similarly alleged that, because Gann's claims were derivative of the claims belonging to the players, her claims must also be subject to arbitration.

In opposition to the motions to compel arbitration, the plaintiffs argued that they could not be compelled to arbitrate their claims because they were not parties to any contract with the defendants. The plaintiffs also disputed that they could be compelled to arbitrate under a theory of equitable estoppel. According to the plaintiffs, equitable estoppel did not

apply because (1) their claims do not depend on the existence of any provision of the defendants' contracts with the players and (2) the scope of each arbitration provision is limited to the signatories themselves. They further insisted that, because the contracts containing the arbitration provisions in these cases were based on gambling consideration, the provisions of those contracts -- including the arbitration provisions -- were void and unenforceable.

D. The Trial Court's Rulings

On June 7, 2024, the trial court entered orders denying the defendants' motions to dismiss and motions to compel arbitration. As relevant here, the trial court rejected the defendants' argument that § 8-1-150(b) does not permit a plaintiff to recover multiple gamblers' losses. According to the trial court,

"nothing in the text of the statute limits the recovery to a single gambler's loss. Instead, the Alabama legislature chose to begin the code section by declaring that all contracts founded, even in part, on a gambling consideration are void. Not some of them. Not one contract a time. All gambling contracts are void. The rest of the statute must be read as flowing from this initial statement. Because such contracts (all of them) are void, people who lose money at gambling can get their money back within a short time, and if they do not do so, then 'any other person' can come along and recover that money for the use of the family members. There simply is no prohibition in this statute against the joinder of multiple

claims."

The trial court similarly rejected the defendants' claim that the nonsignatory plaintiffs should be compelled to arbitrate their claims against the defendants. The trial court explained that there was no evidence indicating that these named plaintiffs had ever agreed to any contract with the defendants. It further explained that the nonsignatory plaintiffs could not be equitably estopped from avoiding arbitration because they were not seeking to vindicate any rights that depended on the existence of a contract containing an arbitration provision. Thus, the trial court denied the defendants' motions to dismiss and motions to compel arbitration. The defendants subsequently appealed to this Court. This Court consolidated the appeals.

### Discussion

The primary issue presented by these appeals is whether the trial court erred in declining to compel arbitration of the plaintiffs' claims. The defendants argue that the nonsignatory plaintiffs in these cases are obligated to arbitrate their claims against the defendants because, they say, those claims are derivative of claims that fall within the scope of the arbitration provisions. According to them, the nonsignatory plaintiffs

stepped into the players' shoes for the purposes of seeking recovery of the players' funds and, thus, are bound by the arbitration provisions between the defendants and the players. We agree.

Although our Court acknowleges that, generally "a nonsignatory to an arbitration agreement cannot be compelled to arbitrate his or her claims," UBS Fin. Servs., Inc. v. Johnson, 943 So. 2d 118, 122 (Ala. 2006), that general rule is not without exceptions. One such exception can be found in our caselaw considering when the executor or administrator of an estate may be bound by an arbitration provision executed by the decedent. See, e.g., SouthTrust Bank v. Ford, 835 So. 2d 990 (Ala. 2002), and Briarcliff Nursing Home, Inc. v. Turcotte, 894 So. 2d 661 (Ala. 2004).

In SouthTrust Bank, the decedent entered into a checking-account contract with SouthTrust Bank. That contract included an arbitration provision. Before his passing, the decedent and the bank were involved in a dispute concerning the bank's cashing of an allegedly forged check that was drawn on the decedent's account. Following the decedent's death, his daughter, acting as the administratrix of her father's estate, asserted various claims against SouthTrust Bank related to the bank's cashing of the allegedly forged check. This Court held that her claim to

12

recover the value of the improperly paid check was subject to arbitration

and explained as follows:

> "For the same reason the powers of an executor or an administrator encompass all of those formerly held by the decedent, those powers must likewise be restricted in the same manner and to the same extent as the powers of the decedent would have been. Thus, where an executor or administrator asserts a claim on behalf of the estate, <u>he or she must also abide by the terms of any valid agreement, including an arbitration agreement</u>, entered into by the decedent."

<u>Id.</u> at 993-94 (emphasis added).

In <u>Briarcliff</u>, the fiduciary parties for two nursing-home residents

signed admissions contracts containing mandatory arbitration provisions

on behalf of those residents. 894 So. 2d at 663. Following the residents'

deaths, those same parties, acting as personal representatives of the

residents' estates, asserted wrongful-death claims against the nursing

home. <u>Id.</u> Our Court held that, because the residents had been bound by

the arbitration provisions, so too were the personal represenatives of

their estates. As we explained:

> "'We recognize that [a personal representative] of a decedent's estate <u>stands in the shoes of the decedent</u>. We also recognize that the "[p]owers [of a personal representative], in collecting the debts constituting the assets of the estate, are just as broad as those of the deceased."

13

> For the same reason the powers of an executor or an administrator encompasses [sic] all of those formerly held by the decedent, those <u>powers must likewise be restricted in the same manner and to the same extent as the powers of the decedent would have been</u>. Thus, where an executor or administrator asserts a claim on behalf of the estate, he or she <u>must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent</u>.'

> "[<u>SouthTrust Bank v. Ford</u>, 835 So. 2d 990] at 993-94 [(Ala. 2002)] (citations omitted). Therefore, in this case, [the personal representatives] are bound by the arbitration provisions contained in the admission contracts."

<u>Id.</u> at 665 (emphasis added).

Both <u>SouthTrust Bank</u> and <u>Briarcliff</u> embrace the principle that, because an executor or administrator stands in the decedent's shoes when asserting claims that are derivative of the decedent's rights, he or she "must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent." <u>SouthTrust Bank</u>, 835 So. 2d at 994. We think this logic applies just as forcefully to the plaintiffs in these cases.

In reaching this conclusion, we follow other jurisdictions, like Florida, that require "a non-signatory plaintiff to arbitrate when the underlying action is 'derivative' of a wrong committed against a signatory

14

to an arbitration provision." Lubin v. Starbucks Corp., 122 F.4th 1314, 1322-23 (11th Cir. 2024) (citing Laizure v. Avante at Leesburg, Inc., 109 So. 3d 752, 762 (Fla. 2013)). The Eleventh Circuit Court of Appeals explained that under Florida law "'[d]erivative claims' are claims where the plaintiff's right to recover is predicated on another party's right to recover." Lubin, 122 F.4th at 1323 (citing Laizure, 109 So. 3d at 760). Lubin referred to this as the "derivative claim doctrine." Lubin, 122 F.4th at 1322.[2]

Here, the plaintiffs' right to recover under § 8-1-150(b) is clearly

---

[2]Unlike the court in Laizure or our Court in SouthTrust and Briarcliff, the Lubin court utlimately found that the claim asserted by the nonsignatory plaintiff in that case was not derivative. In Lubin, the nonsignatory plaintiff was the husband of a Starbucks employee and had asserted certain statutory rights pursuant to 29 U.S.C. § 1166, which had been enacted as part of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). 122 F.4th at 1321. Specifically, he alleged that Starbucks had failed to comply with § 1166(a), which required Starbucks to provide "each covered employee and spouse" with adequate COBRA notice. The Lubin court explained that the statute at issue provided the nonsignatory plaintiff with his own separate right to COBRA notice. Lubin, 122 F.4th at 1321 (holding that husband had an "independent statutory right to an adequate COBRA notice"). In contrast to the present cases, the claim asserted by the nonsignatory plaintiff in Lubin was not premised on a wrong committed against the signatory to an arbitration agreement but, instead, was based on the defendant's alleged violation of "a statutory duty [that] it owed to [the nonsignatory plaintiff] himself, not to his wife." Id. at 1322.

predicated on the players' right to recover under § 8-1-150(a). As previously noted, § 8-1-150 provides, in pertinent part:

> "(a) All contracts founded in whole or in part on a gambling consideration are void. <u>Any person who has paid any money</u> or delivered any thing of value lost <u>upon any game</u> or wager <u>may recover such money</u>, thing, or its value by an action commenced within six months from the time of such payment or delivery.

> "(b) Any other person <u>may also recover</u> the amount of <u>such money</u>, thing, or its value by an action commenced within 12 months <u>after the payment</u> or delivery thereof <u>for the use</u> of the wife or, if no wife, the children or, if no children, the next of kin of the loser."

(Emphasis added.)

Section 8-1-150(a) gives the loser a cause of action to recover his or her money ("Any person who has paid any money … may recover such money …."). Section 8-1-150(b) authorizes any other person to bring an action to "also recover" "such money" (that is, <u>the same money</u>) on behalf of the loser's family in the event that the loser does not invoke his or her right to recovery.

Claims under § 8-1-150(b) are necessarily derivative because a plaintiff cannot prevail on such a claim without showing that the alleged gambler could also have recovered under subsection (a). Thus, the right created by § 8-1-150(b) depends on the wrong that was directly committed

16

against the alleged gambler. In short, a plaintiff can prevail under § 8-1-150(b) only if the alleged gambler could have prevailed under § 8-1-150(a).

And, this is confirmed by the express limitation in the statute to a single recovery -- whether the claim is brought under subsection (a) or subsection (b). See § 8-1-150(c) ("A judgment under either subsection (a) or (b) for the amount of money paid, thing delivered, or its value is a good defense to any action brought for such money, thing, or its value under the provisions of the other subsection.").

Here, in bringing their claims under § 8-1-150(b), the plaintiffs are standing in the legal shoes of the players and are bound by the arbitration provisions to the same extent as the players. At oral argument, counsel for the plaintiffs correctly conceded that, had the players asserted claims under § 8-1-150(a), those claims would be subject to those provisions. Accordingly, the plaintiffs' derivative claims are subject to arbitration, and the trial court erred in denying the defendants' motions to compel arbitration in these cases.

## Conclusion

Based on the foregoing, we reverse the trial court's orders denying

17

the defendants' motions to compel arbitration and remand the cases for the trial court to grant the motions.[3]

SC-2024-0454 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

SC-2024-0455 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Shaw, Wise, Bryan, and Mitchell, JJ., concur.

Stewart, C.J., and Mendheim and McCool, JJ., concur in the result.

Sellers, J., concurs in the result, with opinion.

---

[3]Because our Court concludes that the disputes in these cases must be arbitrated, we pretermit discussion of the parties' arguments concerning the trial court's orders denying the defendants' motions to dismiss.

SELLERS, Justice (concurring in the result).

Gayla Hamilton Mills and Olivia Taylor Gann ("the plaintiffs") commenced separate actions against Zynga, Inc., and Huuuge, Inc. ("the defendants"), respectively, in the Franklin Circuit Court ("the trial court"), pursuant to § 8-1-150(b), Ala. Code 1975. In their complaints, the plaintiffs seek to recover unspecified amounts of money lost by numerous unidentified Alabama citizens, who played the defendants' casino-themed, social gaming applications during a certain period. They further assert that the money they seek to recover is for the benefit of the "families" of the alleged gamblers who paid and lost money. The defendants moved the trial court to compel arbitration in each case, citing the arbitration agreements between the defendants and the unidentified persons who played the defendants' games. The defendants also moved to dismiss the actions for failure to state a claim, pursuant to Rule 12(b)(6), Ala. R. Civ. P. The trial court denied both motions. The main opinion reverses the trial court's orders on the ground that the plaintiffs are required to arbitrate their claims. Although I agree that the plaintiffs are required to arbitrate their claims based on the procedural posture of the cases, I nonetheless concur in the result because, in my opinion, the

19

plaintiffs fail to state a cause of action under § 8-1-150(b) and their complaints should therefore be dismissed. Section 8-1-150 provides, in relevant part:

"(a) All contracts founded in whole or in part on a gambling consideration are void. A person who has paid money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

"(b) Any other person may also recover <u>the amount</u> of such money, thing, or its value by an action commenced within 12 months <u>after the payment or delivery thereof</u> for the use of the wife or, if no wife, the children or, if no children, the next of kin of <u>the loser.</u>"

(Emphasis added.)

Here, the plaintiffs seek recovery under the statute for unspecified amounts of money lost by numerous unidentified Alabama citizens. However, the use of the definite article "the" before the words "amount" and "loser" indicates specificity. See 1A Norman J. Singer & J.D. Shambie Singer, <u>Statutes and Statutory Construction</u> § 21:16 (7th ed. 2009) (Supp. 2021-2022 at p. 43) ("The word 'the' is a definite article, and unlike 'a' or 'an,' that definite article suggests specificity."). Thus, § 8-1-150(b) contemplates the identity of "the loser" and "the amount" of money lost through gambling. Moreover, § 8-1-150(a) permits any person who

has lost money to commence an action to recover that loss within six months from the time of delivering the money to the winner. If the loser does not bring an action within six months from the time of that delivery, then § 8-1-150(b) provides that any other person may recover the amount of such money by an action commenced within 12 months "after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser."[4] The plaintiffs do not allege that a loser failed to commence an action within 6 months from the time of delivering money to the defendants, nor can they allege that they timely brought their actions within 12 months after such delivery without alleging the date of a loss. The right to recover under § 8-1-150(b) or the right of action depends upon bringing the suit within the time prescribed. See Bowery v. Babbit, 99 Fla. 1151, 1163, 128 So. 801, 807 (1930)("[W]here a statute confers a right and expressly fixes the period within which suit to enforce the right must be brought, such period is treated as the essence of the right to maintain the action, and ... the

---

[4]The statutory framework of § 8-1-150(b) is similar to Alabama's wrongful-death statute insofar as it provides a single plaintiff a cause of action in a representative capacity to collect damages to distribute on behalf of statutory beneficiaries, specifically the loser's heirs at law.

plaintiff or complainant has the burden of affirmatively showing that his suit was commenced within the period provided."). Here, the complaints lack the most basic elements necessary to support a cause of action under § 8-1-150(b): the plaintiffs are suing on behalf of unidentified parties and the injury, damages, and relief are undetermined. In short, the complaints fail to allege that a specific loser lost a certain amount of money on a certain date. Because the plaintiffs' failure to plead the statutory requirements is fatal to their claims, their complaints should ultimately be dismissed. For this reason, I concur in the result.